UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATHANIEL ALLEN WHITE,

    Defendant.
    _____/

Case No. 09-20438

Honorable Nancy G. Edmunds

**ORDER ADDRESSING PRE-TRIAL MOTIONS [13, 21, 22, 26, 27, 33]**

Defendant is charged in a First Superseding Indictment with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); and (2) unlawful possession with intent to distribute heroin, in violation of 18 U.S.C. § 841(a)(1). This matter comes before the Court on the following motions:

    (1)    Government's Motion *In Limine* Regarding 911 Call and Victims' Statements at the Scene [21]

    (2)    Defendant's Motion *In Limine* to Exclude All Spousal Statements and Potential Testimony [27];

    (3)    Defendant's Motion *In Limine* to Exclude Statements Pursuant to Confrontation Clause [33];

    (4)    Defendant's Motion For Notice of 404(b) Evidence and Brady Materials [13];

    (5)    Government's Motion *in Limine* Regarding Defendant's Drug Conviction [22]; and

    (6)    Defendant's Motion *in Limine* to Exclude Prior Drug Convictions Under FRE 609 [26]

For the reasons stated below and on the record at the May 19, 2010 hearing, the government's motion *in limine* regarding 911 call and victims' statements at the scene [21] is GRANTED, and Defendant's motions *in limine* to exclude all spousal statements and potential testimony [27] and to exclude statements pursuant to confrontation clause [33] are DENIED; Defendant's motion for notice of Rule 404(b) evidence and *Brady* materials [13] is DENIED AS MOOT; and the government's motion *in limine* regarding Defendant's drug conviction [22] and Defendant's motion *in limine* to exclude prior drug convictions under Federal Rule of Evidence 609 [26] are GRANTED IN PART and DENIED IN PART.

**I.  Background**

On August 16, 2009, at 10:09 a.m., a 911 call was placed from a pay phone by an individual later identified as Jopez Johnson ("Johnson").  Johnson told 911 that a man with dread locks had just fired a gun at him near the intersection of Constance and Ashton in the City of Detroit, less than two blocks from where the call was made.

This information was relayed through dispatch.  Two Detroit Police Officers who were in the area — Officers James Wiencek and Stephen Kue — responded and, within a few minutes of the call, were the first officers on the scene.  These Officers observed Johnson and a woman — later identified as Defendant's wife, Samantha White — and exited their vehicle to talk to them.

Officers Wiencek and Kue spoke with the woman who identified herself as Samantha White.  White stated that she and her husband, Defendant Nathaniel White, were outside of their home and in an argument when Johnson walked by them.  White told the Officers that Johnson was checking whether she was okay, and Defendant asked Johnson "who the [ ] you looking at," then went inside the house, came out with a firearm, and started

2

shooting at Johnson. The Officers also spoke with Johnson. He told them that Defendant had shot at him. The Officers were also told that Defendant went back into the house after he shot at Johnson. White provided the Officers with a key to the home, and the Officers went inside.

The Officers looked through the first floor rooms for Defendant but did not find him. The Officers proceeded upstairs. They observed a person with dread locks on the ground. This person matched the description of the suspect and was later identified as Defendant. The Officers secured and handcuffed Defendant. Inside an open cabinet next to Defendant, the Officers observed and recovered a knotted plastic baggie containing smaller baggies that contained 5.9 grams of heroin. The Officers also recovered an AK-style firearm nearby. This gun matched the description of the gun that Johnson had provided to the Officers.

## II. Analysis

### A. Defendant's and Government's Motions Re: 911 Call and Victim's and Spouse's Statements and Potential Testimony

**(1) Government's Motion *In Limine* Regarding 911 Call and Victims' Statements at the Scene [21]**

**(2) Defendant's Motion *In Limine* to Exclude All Spousal Statements and Potential Testimony [27]; and**

**(3) Defendant's Motion *In Limine* to Exclude Statements Pursuant to Confrontation Clause [33]**

In its motion, the government argues that both the 911 call and Johnson's and White's statements to the responding Officers are admissible as present sense impressions and excited utterances, under Fed. R. Evid. 803(1), 803(2) respectively, as exceptions to the

hearsay rule. In contrast, Defendant argues that Johnson's 911 call and statements to the police are inadmissible because they (1) are not relevant to the charges in the indictment (Rule 401), (2) have not been authenticated, (3) are substantially more prejudicial than probative under Rule 403 balancing; and (4) are out-of-court testimonial statements and thus their admission would violate the Confrontation Clause. Defendant also argues that Mrs. White's statements to the police should be excluded because they (1) do not constitute "excited utterances" under Rule 803(2); (2) are precluded under the spousal privilege (Rule 501); and (3) are out-of-court testimonial statements and thus their admission would violate the Confrontation Clause.

As to Mr. Johnson, Defendant challenges (1) the 911 Call on August 16, 2009; (2) an oral statement to Officer Stephen Kue on August 16, 2009; and (3) a written statement to Sergeant Hahn on August 16, 2009. As to Mrs. White, Defendant challenges (1) an oral statement to Officer Cecilia Smith on August 16, 2009; (2) an oral statement to Officer Kue on August 16, 2009; (3) a written statement to Sergeant Hahn on August 16, 2009; and (4) an oral statement to ATF Special Agent James Soper on an unknown date.

As discussed below, the 911 call and Mr. Johnson's and Mrs. White's statements to the officers at the scene are admissible as excited utterances. Moreover, admission of these statements will not violate the Sixth Amendment Confrontation Clause because they are non-testimonial. *See United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007).

**1. Relevancy and Rule 403 Balancing Favor Admission**

As an initial matter, Johnson's 911 call and statements to the police are relevant to the charge that Defendant illegally possessed a firearm on August 16, 2009. Moreover, as the

4

government argues, Rule 403 balancing favors admission. The Court now addresses the hearsay exceptions.

### 2. Hearsay Exceptions Apply

#### a. Present Sense Impression

Rule 803(a) defines a "present sense impression" as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1).

The government persuasively argues that this hearsay exception applies to Johnson's 911 call because he had personal knowledge of the events and described them shortly after perceiving them. Specifically, the government asserts that Johnson's statements to the 911 dispatcher were about an on-going, threatening situation. He first stated that "there's a guy standing out here with a gun shooting at people as they walk past the house." (Gov't Ex. 1, 911 Tr.) He then told the dispatcher that "he's standing out here right now." *Id.* The dispatcher attempted to determine the location of the house, which caused Johnson to get excited, as he was trying to say something about "getting away from" the event or shooter. *Id.* After the dispatcher obtained a description of the house, Johnson told the dispatcher that "he's standing out there with a gun now." *Id.* The dispatcher then asked for a description of the person, and Johnson stated that "he's stand'n in his drawers with dread locks." *Id.* Both the verb tense Johnson used and his description of the scene show that Johnson was describing the situation moments after having personally observed it. The 911 call was placed from a pay phone at a gas station one and one-half blocks north of the Defendant's house. (Gov't's Ex. 1, CAD Rept.)

5

*See United States v. Davis*, 577 F.3d 660, 668 (6th Cir. 2009) (affirming the district court's decision holding that statements in 911 call were present sense impressions and observing that, although the 911 call was made minutes after the observed events, "[t]his 911 call, made immediately after witnessing the described event, is not distinguishable from one that was contemporaneous with the event itself" and "meets the definition of present sense impression under Rule 803(1).").

*See also United States v. Price*, 58 F. App'x 105, 107 (6th Cir. 2003) (affirming the district court's decision holding that statements in 911 call were present sense impressions because the caller's "firsthand knowledge may be inferred from the 911 tape" and her 911 call, which was "made within minutes of the event," was "sufficiently contemporaneous to qualify under either exception.").

### b. Excited Utterances

The government further argues that the content of the 911 call and Mr. Johnson's and Mrs. White's statements to the police at the scene fall within the hearsay exception for excited utterances. The Court first discusses the excited utterance hearsay exception and then determines whether the 911 call or Mr. Johnson's and Mrs. White's statements to the police at the scene fall within this hearsay exception.

Rule 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). "To satisfy the exception, a party must show three things. First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement

6

caused by the event." *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (*en banc*) (internal quotation marks and citation omitted). "All three inquiries bear on the ultimate question whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Id.* (internal quotation marks and citation omitted).

### (1) The 911 Call

The government persuasively argues that the content of the 911 call satisfies the requirements for an excited utterance exception. First, Johnson's statement that Defendant brandished a gun and fired at him describes an event startling enough to cause nervous excitement. Second, Johnson's statements that Defendant was standing out there with a gun and that Johnson was trying to get away from him show that the call was made before there was time to contrive or misrepresent. Third, Johnson made the call while still under the stress of excitement as shown by the 911 dispatcher's statement to him to "calm your voice down."

*See Arnold*, 486 F.3d at 184-85 (affirming the district court's decision that the content of a 911 call was an excited utterance because the 911 operator had to tell the caller to "calm down," the caller reported "being threatened by a convicted murderer wielding a semi-automatic handgun," and "the call took place . . . 'slightly more than immediately' after the threat" and observing that "our cases do not demand a precise showing of the lapse of time between the startling event and the out-of-court statement.").

*See also Davis*, 577 F.3d at 668-69 (affirming the district court's decision that the content of a caller's 911 call was an excited utterance and observing that it meets the

second prong of the excited utterance test because the 911 call was made "only moments after witnessing the event."); *Price*, 58 F. App'x at 106-07 (same).

**(2) Johnson's and White's Statements to Officers**

The government also persuasively argues that, for reasons similar to the 911 call, Johnson's and White's statements to the police upon their arrival at the scene are admissible as excited utterances. *See Arnold*, 486 F.3d at 186 (observing that even after 5 to 21 minutes after the 911 call, "[i]t remained the case that a startling event had occurred," "[t]he time that had passed . . . did not give [the speaker] sufficient time to misrepresent what had happened," and "she remained visibly agitated by [the defendant]'s threat."). Defendant's argument that Mrs. White's statements in response to questions from the police officers who were first upon the scene cannot be considered excited utterances lacks merit. The Sixth Circuit's three prong test for excited utterances does not require the statements to be unprompted. Moreover, in *Maggard v. Ford Motor Co.*, 320 F. App'x 367, 376 n.8 (6th Cir. 2009), the Sixth Circuit observed that "[s]tatements made in response to questioning are still excited utterances."

Having addressed the hearsay exceptions, the Court now turns to Defendant's arguments that the spousal privilege and Confrontation Clause bar admission of the 911 call and statements to the police.

### 3. Admission of Mrs. White's Statements Does Not Violate the Spousal Privilege

Defendant argues that the spousal privilege recognized in Fed. R. Evid. 501 precludes the admission of statements that Mrs. White made to law enforcement officials and likewise

precludes her potential trial testimony in his criminal trial.  As discussed below, Defendant's arguments lack merit.

Fed. R. Evid. 501 governs testimonial privileges in federal criminal trials.  Rule 501 provides, in pertinent part, that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  Fed. R. Evid. 501.  The Sixth Circuit has observed that "[t]he defendant spouse may assert the marital communications privilege to exclude the testimony of the witness spouse concerning confidential marital communications." *United States v. Gray*, 71 F. App'x 485, 488 (6th Cir. 2003) (citing *United States v. Sims*, 755 F.2d 1239, 1241 (6th Cir. 1985)).  "To assert the privilege, the defendant spouse must satisfy three requirements:  (1) at the time of the communication, there must have been a marriage recognized as valid by state law; (2) the application of the privilege must be limited to utterances of expressions intended by one spouse to convey a message to the other; and (3) the communication must be made in confidence."  *Gray*, 71 F. App'x at 488 (citing *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993)).

Defendant does not convincingly explain how these three requirements are satisfied.

The government responds by explaining that there are two evidentiary privileges that relate to marriage:  (1) the adverse spousal testimony privilege, and (2) the confidential marital communications privilege.  *See United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993).  "The adverse spousal testimony privilege protects one spouse from being compelled to testify against the other" and "may be exercised only by the testifying spouse." *Id.*  Accordingly, the government correctly asserts that Defendant cannot invoke this privilege to prevent Mrs. White from testifying.  The confidential marital communications

privilege, however, "is assertable by either spouse." *Id.* The three prerequisites to its assertion are stated above. The government persuasively argues that Defendant cannot satisfy these three prerequisites because Mrs. White's statements to law enforcement officials were not communications "intended by one spouse to convey a message to the other." *Id.* Likewise, these communications were not "made in confidence." *Id.*

### 4. Admission of Statements Does Not Violate Confrontation Clause

Finally, the government argues that Johnson's 911 call and Johnson's and White's out-of-court statements to the police officers who first arrived on the scene were not testimonial. Because the statements are not "testimonial," the government argues that there is no Confrontation Clause violation. *See Arnold*, 486 F.3d at 187-89 (citing and discussing *Crawford v. Washington*, 541 U.S. 36 (2004) and quoting *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 2273-74 (2006) that "[s]tatements are nontestimonial . . . when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."). This Court agrees with the government. Similar to the facts in *Arnold*, Johnson and White made unprompted statements to the police under circumstances where there was an on-going emergency — Defendant with a semi-automatic weapon had shot at Johnson and still had access to that weapon when the police arrived.

For the above-stated reasons, the government's motion *in limine* regarding the 911 call and the victims's statements at the scene [21] is GRANTED, and Defendant's motions *in limine* to exclude all spousal statements and potential testimony [27] and to exclude statements pursuant to the Confrontation Clause [33] are DENIED.

**B. Defendant's and Government's Motions Re: Prior Drug Convictions**

**(1) D's Motion For Notice of 404(b) Evidence and Brady Materials [13];**

**(2) Government's Motion *in Limine* Regarding Defendant's Drug Conviction [22]; and**

**(3) D's Motion *in Limine* to Exclude Prior Drug Convictions Under FRE 609 [26]**

Prior to the conduct at issue in this case, Defendant was convicted for the following felony offenses:

(1) on August 30, 2005 for delivery/manufacturing less than 50 grams of a controlled substance, Mich. Comp. Laws § 333.7401(2)(a)(iv), based on a July 5, 2005 arrest;

(2) on November 3, 2005 for two counts of felony larceny from a motor vehicle, Mich. Comp. Laws § 750.356a(1), based on a July 21, 2004 arrest;

(3) on April 8, 2009 for possession with intent to distribute less than 50 grams of a controlled substance, Mich. Comp. Laws § 333.7401(2)(a)(iv), and third-degree fleeing and eluding, Mich. Comp. Laws § 257.602a(3)(a), based on a June 13, 2008 arrest; and

(4) on April 8, 2009 for possession with intent to distribute less than 50 grams of a controlled substance, Mich. Comp. Laws § 333.7401(2)(a)(iv), based on a August 22, 2008 arrest.

The government's motion asserts that, pursuant to Fed. R. Evid. 404(b) and 403, this Court should allow it to admit into evidence the Judgment and transcript of Defendant's plea in connection with his April 8, 2009 conviction for possession with intent to deliver heroin and the testimony of the arresting officers. It argues that this evidence is admissible under Rules 404(b) and 403 because it shows Defendant's intent for possessing heroin on

August 16, 2009 and is thus relevant to the crime charged in this matter, and because its probative value is not substantially outweighed by its prejudicial effect.

Defendant's motion *in limine* argues the opposite — that his 2005 convictions and his April 8, 2009 drug convictions are inadmissible under Rule 403 balancing and cannot be used to impeach him under Fed. R. Evid. 609.

The Court begins its analysis with Defendant's motion for Rule 404(b) notice and *Brady* materials.

### 1. Government's Motion Constitutes Rule 404(b) Notice

Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent . . . provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b).

The government's motion provides the necessary Rule 404(b) notice; and thus, Defendant's motion for Rule 404(b) notice [13] is DENIED AS MOOT.

The Court now considers the substance of the government's motion — whether Defendant's prior convictions are admissible.

### 2. Admissibility of Prior Convictions Under Rules 404(b) and 403

Defendant acknowledges that an element of the gun charge, 18 U.S.C. § 922(g), is the fact of a prior felony conviction. Defendant's motion *in limine*, however, relates to the admissibility of the <u>nature</u> and <u>number</u> of prior felony convictions; not their existence.

Defendant argues that neither the April 8, 2009 prior heroin conviction nor any of his other prior felony convictions are admissible because their prejudice to Defendant, if admitted, far outweigh their probative value, if any.

In determining whether to admit the Rule 404(b) evidence, the Court must undertake a two-step analysis. First, "the district court must determine whether one of the factors justifying the admission of 'other acts' evidence is material, that is, 'in issue,' in the case, and if so, whether the 'other acts' evidence is probative of such factors." *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994). Second, "[t]he court must . . . determine whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Id.* (citations omitted).

The government argues that (1) Defendant's intent is "in issue" because to be found guilty of the charged crime of unlawful possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), the government must show that Defendant has the specific intent to distribute the heroin that he possessed; and (2) because the Court can give a limiting instruction, the prior conviction and arrest were sufficiently close in time and show a similar *modus operendi*, and other less prejudicial evidence is unavailable, Rule 403 balancing favors admission. The government's statement that "other less prejudicial evidence is unavailable" on the issue of "specific intent" is an important point as illustrated in the following discussion of a recent Sixth Circuit's decision.

On the issue of Rule 403 balancing, the government attempts to distinguish a recent Sixth Circuit decision, *United States v. Jenkins*, 593 F.3d 480 (6th Cir. 2010). In *Jenkins*, the district court found, under Rule 404(b), the defendant's prior conviction for possession of marijuana with intent to distribute was relevant to the "knowledge and intent" elements

13

of his charged drug offense. *Id.* at 484-85. Applying Rule 403 balancing, the district court then found that the probative value of the evidence outweighed its potential for prejudicial effect. *Id.* at 485. The district court also gave a limiting instruction. *Id.* On appeal, the Sixth Circuit reversed the district court's decision because it was "fairly described as piling on" and thus substantially more prejudicial than probative. *Id.* at 482-83. While executing a search warrant at the defendant's residence, the police "found drugs and guns in virtually every room of the house, most of which lay in plain view on tables or bookshelves." *Id.* at 483. "All told, the officers seized 22.4 grams of crack cocaine, 374.4 grams of powder cocaine, 1.9 kilograms of marijuana, several sets of scales, baggies, and other drug paraphernalia, body armor, over $13,000 in cash, three pistols, a rifle, and two shotguns." *Id.*

The Sixth Circuit began by analyzing whether evidence of the defendant's prior conviction was relevant to his knowledge and intent. *Id.* at 485. It concluded that the defendant's knowledge was not "at issue in any meaningful sense" because "[w]hoever possessed all these drugs laying in plain view throughout the house obviously did not do so inadvertently. Thus, as a practical matter, the issue of knowledge was subsumed by that of possession." *Id.* As to the issue of intent, the Sixth Circuit determined that the defendant's "specific intent was at issue for purposes of Rule 404(b)." *Id.*

Next, the Sixth Circuit confronted the "question whether proof of Jenkins's prior convictions was *probative* of that issue as well." *Id.* (emphasis in original). It observed that the Sixth Circuit's "precedents are hard to reconcile on this point." *Id.* To illustrate, it compared *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) ("where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove

14

that the defendant acted with the specific intent"), with *United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008) ("to be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial"). *Id.* The *Jenkins* Court concluded that it need not reconcile these decisions because the government "runs into trouble . . . in the balancing of probative value and prejudicial effect under Rule 403." *Id.* Specifically, the *Jenkins* Court found that the government ran into trouble when the court considered the availability of other means of proof. "One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *Id.* (internal quotation marks and citation omitted). The *Jenkins* Court observed the government conceded that its other evidence of intent to distribute was overwhelming; and when this was weighed against the prejudicial effect of the defendant's prior conviction, the *Jenkins* Court concluded that the balance tipped against admission of the defendant's prior conviction. *Id.* at 486.

> When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *Johnson*, 27 F.3d at 1193. Even when properly instructed to consider the evidence only for some legitimate purpose — as the jury was instructed here — the danger is obvious that the jury will treat it as propensity evidence instead.

*Id.*

The government argues here that *Jenkins* is distinguishable because the amount of drugs at issue here — 5.9 grams of heroin — is significantly less than that considered in *Jenkins* and thus the government does not have less prejudicial evidence available to establish intent and thus introduction of Defendant's prior conviction cannot be considered

15

impermissible piling on. The government makes this argument, however, while refusing to concede that the heroin Defendant possessed was a user amount.

In light of *Jenkins*, this Court's decision as to the admissibility of Defendant's prior April 8, 2009 heroin conviction under Rule 404(b) will depend on its Rule 403 balancing and its consideration of the government's argument that it does not have less prejudicial evidence available to establish Defendant's specific intent to distribute on the drug charge in the current indictment. Because the Court's Rule 403 balancing likewise affects its decision whether any of Defendant's prior convictions are admissible under Rule 609, it first discusses Defendant's motion raising that issue.

### 3. Admissibility Under Rule 609

Defendant also argues that Fed. R. Evid. 609 precludes the admission of evidence concerning his prior drug convictions. Specifically, Defendant argues that his prior convictions are not admissible because they are not for crimes of dishonesty and, under Rule 403 balancing, their prejudicial effect substantially outweighs their probative value. The government argues the opposite – that evidence of Defendant's prior convictions is more probative that prejudicial. Specifically, it argues that prior drug convictions are probative of veracity and any prejudicial effect will be adequately mitigated by an immediate limiting instruction. The Court begins with an analysis of Rule 609 and the factors the Court considers when determining whether evidence of prior convictions are admissible to impeach a defendant.

Rule 609 of the Federal Rules of Evidence addresses "Impeachment by Evidence of Conviction of Crime" and provides that:

> (a)  General rule – For the purpose of attacking the character for truthfulness of a witness,
>
> (1)  evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, <u>if the crime was punishable by death or imprisonment in excess of one year</u> under the law under which the witness was convicted, and <u>evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused;</u> and
>
> (2)  evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609(a) (emphasis added).

As an initial matter, Rule 609 alone does not present an obstacle to admission of Defendant's prior convictions if they are not introduced for impeachment purposes; i.e., if, as discussed above, a prior conviction is introduced for the purpose of establishing the specific intent required for a conviction on the current drug charge. As observed in the Advisory Committee Notes for the 2006 Amendments to Rule 609, "[t]he limitations of Rule 609 are not applicable if a conviction is admitted for a purpose other than to prove the witness's character for untruthfulness." Before admitting a prior conviction, however, the Court will be required to do Rule 403 balancing.

If Defendant does testify and the government seeks to admit his prior convictions to impeach his credibility, the Sixth Circuit requires the Court to consider the following factors:

(1) The impeachment value of the prior crime.
(2) The point in time of the conviction and the witness' subsequent history.
(3) The similarity between the past crime and the charged crime.
(4) The importance of the defendant's testimony.
(5) The centrality of the credibility issue.

*United States v. Moore*, 917 F.2d 215, 234 (6th Cir. 1900) (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).

As to factor (1), the government (Br. at 3-5) cites numerous decisions supporting its argument that prior drug convictions have probative value for impeachment purposes; i.e., they are probative of the defendant's veracity. *See, e.g., United States v. Murphy*, 172 F. App'x 461, 463 (3d Cir. 2006); *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995); *United States v. Womack*, No. Crim.A. 97-72 MMS, 1998 WL 24355, *2 (D. Del. Jan. 12, 1998); *United States v. Davis*, 235 F.R.D. 292, 296 (W.D. Pa. 2006); *United States v. Chauncey*, 420 F.3d 864, 874 (8th Cir. 2005). The government further argues that, if Defendant testifies and denies possession of the firearm and/or drugs, then his credibility becomes an important and central issue in his criminal trial.

As to factor (2), the government argues that the close proximity between Defendant's prior drug convictions and the present offense weighs heavily in favor of admissibility. As to factor (3), it concedes that there is similarity between the past and charged crimes. Nonetheless, the government argues that an immediate limiting instruction will be sufficient to guard against any resulting prejudice. *See United States v. Cox*, 159 F. App'x 654, 658 (6th Cir. 2005) (holding that, "[a]lthough carrying a concealed weapon is not a crime involving dishonesty per se, the concealed-weapon conviction was probative of [the defendant]'s credibility" and further observing that although "[t]here was a risk that the jury would drawn an improper 'propensity' inference from the prior conviction," the risk was adequately "mitigated by an immediate limiting instruction.").

For the following reasons, the government's and Defendant's motions *in limine* regarding Defendant's prior convictions [22, 26] are GRANTED IN PART and DENIED IN PART.

As to the required Rule 403 balancing, Defendant convincingly argues that to allow evidence of a prior conviction for the same crime at issue in the current trial is particularly prejudicial and invites an impermissible inference that, because Defendant committed this crime before, he must be guilty of doing so again. Accordingly, if Defendant does not take the stand and testify at trial, then this Court will GRANT Defendant's motion *in limine* and exclude admission of his prior convictions [26], and DENY the government's motion [22].

If, on the other hand, Defendant does take the stand and testifies at trial, then the government's motion [22] will be GRANTED, and Defendant's motion [26] will be DENIED. Based upon the Court's consideration of the above precedent and its Rule 403 balancing, if Defendant testifies at trial about intent, his credibility becomes highly relevant and all of his above-referenced prior convictions are potentially admissible to impeach him. To remedy any "cumulative effect" of admitting more than the one April 8, 2009 prior heroin conviction in the event that Defendant does testify, the Court may limit how the government asks about any of Defendant's other prior convictions.

For the above-stated reasons, Defendant's motion for notice of Rule 404(b) evidence and *Brady* materials [13] is DENIED AS MOOT; and the government's motion *in limine* regarding Defendant's drug conviction [22] and the Defendant's motions *in limine* to exclude prior drug convictions under Fed. R. Evid. 609 [26] are GRANTED IN PART and DENIED IN PART as discussed above.

19

### III. Conclusion

For the reasons stated above and on the record at the May 19, 2010 hearing, the government's motion *in limine* regarding 911 call and victims' statements at the scene [21] is GRANTED, and Defendant's motions *in limine* to exclude all spousal statements and potential testimony [27] and to exclude statements pursuant to confrontation clause [33] are DENIED; Defendant's motion for notice of Rule 404(b) evidence and *Brady* materials [13] is DENIED AS MOOT; and the government's motion *in limine* regarding Defendant's drug conviction [22] and Defendant's motion *in limine* to exclude prior drug convictions under Federal Rule of Evidence 609 [26] are GRANTED IN PART and DENIED IN PART.

SO ORDERED.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: May 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager